# No. 15-20396

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

JOLEM, LLC .
PLAINTIFF–APPELLANT,

V.

SELECT PORTFOLIO SERVICING, INC., MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS INC. AND U.S. BANK NATIONAL
ASSOCIATION
DEFENDANTS – APPELLEES

On Appeal from the United States District Court
For the Southern District of Texas, Houston Division,
No. 4: 14-cv-3301

**BRIEF OF APPELLANT JOLEM, LLC**

G. P. Matherne
Texas Bar No. 13186300
P.O. Box 547
Spring, Texas  77388
Telephone: (713) 658-9001
Facsimile: (713) 658-9011
legistgpm@comcast.net

***Attorney for Appellant
Jolem, LLC***

## CERTIFICATE OF INTERESTED PARTIES

(1)    Case Number and Style in the District Court:


Case Number:  No. 4:14-CV-3301


Style: *Jolem, LLC* v Select Portfolio Services Inc., et al

(2)    The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Federal Rule of Appellate Procedure 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.


Appellant:        Jolem, LLC

Attorney for Appellants at trial and Appeal:

G. P. Matherne
P O Box 547
Spring, Texas 77383-0547

Appellees:        *U.S. Bank National Association, as Trustee for the J. P. Morgan Mortgage Acquisition Trust 2006-WMC4*

Mortgage Electronic Registration Systems, Inc.


Select Portfolio servicing, Inc.


Attorney for Appellees at trial and on appeal:

Kurt Lance Krolikowski
Locke Lord Bissell et al
600 Travis

i

Ste 2800
Houston, TX 77002
Email: kkrolikowski@lockelord.com

/s/G. P. Matherne
G. P. Matherne

## STATEMENT REGARDING ORAL ARGUMENT

Because the outcome of this case is based upon (1) a recent Texas case that overrules all Federal District Court and Circuit decisions with regards to the issue of standing, and (2) changes to Chapter 51 of the Texas Property Code and its impact upon Mortgage Electronic registration Systems, Inc. inserting its name as beneficiary in a Deed of Trust, Appellant, Jolem, LLC believes oral argument would materially assist the Court in the disposition of this appeal.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT……………………………………iii

TABLE OF AUTHORITIES…………………………………………………vi

RECORD REFERENCES……………………………………………………x

STATEMENT OF JURISDICTION………………………………………………xi

STATEMENT OF ISSUES ON APPEAL……………………………………………xi

STATEMENT OF THE CASE……………………………………………………1

LEGAL STANDARDS…………………………………………………………13

A.    STANDARD OF REVIEW……………………………………………16

B.    JURISDICTIONAL STANDARDS………………………………………17

C.    DUE PROCESS STANDARDS…………………………………………20

C.    NEW YORK TRUST LAW……………………………………………21

D.    CHAPTER 12 TEXAS CIVIL PRACTICES AND REMEDIES CODE………22

SUMMARY OF ARGUMENT………………………………………………23

ARGUMENT

1.    Whether the district court's judgment should be reversed because the assignment of the Watson Deed of Trust by MERS to U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 is Void and not Voidable…………………24

2.    Whether it was reversible error for the court to conclude that MERS transferred the note even though not specifically stated so in the assignment of the Deed of Trust………………………………38

3.    Was it reversible error for the court to conclude that Jolem did not have standing to challenge an assignment of the Watson Deed of Trust to the PSA even though the assignment occurred more than 90 days after the start-up date………………40

4.    Whether Jolem has alleged sufficient facts to give rise to a plausible inference of liability with

regards to Plaintiff's cause of action alleging MERS has no right to assign the beneficial interest in the 'Watson deed of trust to J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 and by doing so, U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 (USB) recorded a fraudulent claim against Jolem's property.............................................42

5.    Whether Jolem has alleged sufficient facts to give rise to plausible liability against MERS with regards to Plainiff's cause of action alleging violations of Section 12.002 of the Tex. Civ. Prac. Rem. Code...................................................................46

CERTIFICATE OF COMPLIANCE...........................................................51

CERTIFICATE OF SERVICE...............................................................52

ECF CERTIFICATIONS.....................................................................53

TABLE OF AUTHORITIES

*Airline Professionals Ass'n v. Airborne, Inc.*,
    332 F.3d 983, 987 (6th Cir. 2003. ……………………………………18

*Aurora Loan Servs., LLC v Weisblum*, 85 AD3d 95,
    108 [2011]……………………………………………………………39

*Bexar Cnty. v. Merscorp, Inc.*, No. 5:12-cv-00586-FB,
*D.E. 36 at 14 (W.D. Tex. Feb. 25, 2013)*
    (M&R issued by Magistrate Judge)…………………………………33

*Butner v United States*, 440 U.S. 48 (1979)…………………………19

*Carroll v. Fort James Corp, 470 F. 3d 1171,*
    *1173 (5th Cir 2006)*…………………………………………………16

*Countrywide Home Loans, Inc. v Gress*,
    68 AD3d 709, 709 [2009]……………………………………………39

*Courtney v. Smith*, 297 F.3d 455, 458-59 (6th Cir. 2002)………………..……18

*Crowe v. Henry*, 43 F. 3d 198, 203 (5th Cir. 1995)…………………………..17

*Crowell v. Housing Authority of City of Dallas,*
    495 SW 2d 887 (Tex.1973) …………………………………………26

*Erie Railroad Co. v. Tompkins*, 304 U.S. 64,
    58 S. Ct 817, 821, 82 L. Ed. 1188 (1938)………………………18, 19

Gov't Personnel Mut. Life Ins. Co. v. Wear,
    251 S.W.2d 525, 529 (Tex. 1952)……………………………….……44

*Girdner v. Rose,* 213 S.W.3d 438, 444-45
    (Tex.App.—Eastland 2006, no pet.)…………………………………49

*Hermann Holdings Ltd. V. Lucent*
    *Technologies, Inc.* 302 F. 3d 552, 558 (5th Cir 2002)………….17

*Hornbuckle v. Countrywide Home Loans, Inc.,*
No. 02-09-00330-CV, 2011 WL 1901975, at *4
(Tex. App.—Fort Worth, May 19, 2011)…………… ……………………33

*HSBC Bank USA v Hernandez*, 92 AD3d 843, 843 [2012]…………39

*In Re Agard*, 444 B.R. 231 (E.D.N.Y. 2011)..................................39

*Kaiser Aluminum & Chem. Sales, Inc. v.
Avondale Shipyards, Inc.*, 677 F.2d 1045,
1050 (5th Cir. 1982)....................................................................17

Kluge v Fugazy, 145 AD2d 537, 538 [1988].............................39

*Lance v. Coffman*, 549 U.S. 437 (2007) .........................................18

*Merritt v Bartholick*, 36 NY 44, 45 [1867].....................................39

*Midwest Media Prop., L.L.C. v. Symmes Twp, Ohio*,
    503 F.3d 456, 460 (6th Cir. 2007) .......................................18

*Miller v. Homecomings Financial, LLC,*
881 F. Supp. 2d 825 (2012).........................................................32

*Millet v. J.P. Morgan Chase, N.A.*, No. SA-11-CV-1031-XR,
    2012 WL 1029497, at *2 (W.D. Tex. Mar. 26,
    2012)..................................................................................32

*Mooney v Madden*, 597 N.Y. S2d 795 (N.Y. App. Div. 1993) .........41

*Piotrowski v. City of Houston*, 51 F.3d 512,
    14 (5th Cir. 1995)...................... .........................................17

*Resolution Trust Corp. v. Camp*, 965 F.2d 25,
    29–30 (5th Cir. 1992*)........................................................32*

*Semerenko v. Cendant Corp.*, 223 F. 3d 165, 173 (3rd Cir.1995)..................17

*Swift. v. Tyson*, 41 U.S. 1, 16 Pet 1, 10 L. Ed 865.........................19

*Swim v. Bank of America*, No. 3:11-CV- 1240-M,
    2012 WL 170758, at *3 n. 25 (N.D. Tex. Jan. 20, 2012)........33

*Thompson v Columbia HCA/Healthcare Corp.*
    125 F. 3d 899, 901 (5th Cir 2001)........................................17

*United Mine Workers v. Gibbs,* 383 U.S. 715 (1966)......................19

*U.S. ex rel. Thompson v Columbia HCA/
Healthcare Corp.* 125 F. 3d 899, 901 (5th Cir 2001)......................17

*U.S. Bank, N.A. v Collymore*, 68 AD3d 752, 753 [2009]...................39

*Wells Fargo Bank Minn., N.A. v Mastropaolo*,
42 AD3d 239, 242 [2007].........................................................39

*Wilcher v. City of Akron*, 498 F.3d 516 (6th Cir. 2007) ................18

**Constitution, Statutes and Rules**

U.S. CONST., art. III, § 2, cl. 1.....................................................18

Tex. Const. art 1 § 19.............................................................,.....20

26  U.S.C.  860D......................................................................14

26 U.S.C. §860F(a)(2)(B).............................................................41

26 U.S.C. §860F(a)(1)..................................................................41

26  U.S.C.  860G(d)(1)  … … … … … … … … … … … … … … … … . 1 5

26  U.S.C.  860G(d)(2)......................................................... 1 4 , 1 5

Tex. Civ. Prac. & Rem Code
        Chapter 12 ......................................21, 23, 24, 29. 46, 47, 49

Tex. Civ. Prac. & Rem Code Section 12.002...............2, 3, 23, 46, 50

Tex. Civ. Prac. & Rem Code Section 12.002(a).............................48

Chapter  51  of  the  Texas  Property  Code.....23, 27, 28, 29, 44, 45

Tex. Civ. Prac. & Rem Code Section 51.0001..............................29

TEX. Gov'T Code § 311.02.........................................................29

Texas Penal Code Sec. 32.21.......................................................35

New York Estates, Powers & Trusts Part 2 - § 7-2.4.........38, 40, 42

**Other Authorities**

Legislative History and Text of House Bill 1493, including Committee Reports, HB 1493, Leg. Sess. 78(R) (2003), available at http://www.legis.state.tx.us/ BillLookup/ BillNumber.aspx....................................................................26

Black's Law Dictionary 38 (5th ed. 1979)..................................41

RECORD REFERENCES

The record is cited "ROA.$y$" where $y$ is the page number.

Appellant's record excerpts are cited "RE$y$" where $y$ is the tab number.

# STATEMENT OF JURISDICTION

On November 2, 2014, Plaintiff-Appellant sued U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 (JPM), Mortgage Electronic Registration Systems Inc.(MERS), and Select Portfolio Servicing, Inc.(SPS) for a declaratory judgment raising state law claims for allegedly fraudulent transfers of real property. ROA.19 Defendants filed a notice of removal on November 18, 2014 invoking the Courts jurisdiction under 28 U.S.C. §§1441, 1446 and 11332 as well as Local Rule 81. ROA.5 The district entered its Order on June 18, 2015 in which it dismissed Plaintiffs' Claims. ROA.870 (RE3). The court entered a Final Judgment on June 18, 2015 in which the June 18, 2015 opinion and order was adopted ROA.887 (RE4) Appellant filed its notice of appeal on July 17, 2015. ROA.888. (RE2) This Court has appellate jurisdiction under 28 U.S.C. § 1291 because this is an appeal from a final decision of a district court.

## STATEMENT OF ISSUES ON APPEAL

Plaintiff-Appellant, Jolem, LLC, sued Defendants-appellees for (a) Permanent Injunction (b) a declaration that Defendant MERS made, presented, or used a document or other record with

knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real property, or an interest in real property., (c) a declaration that Defendant, MERS made, presented, or used a document or other record with knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real property, or an interest in real property, (d) a declaration that the transfer of lien or assignment of the Deed of Trust to U.S. Bank, N.A. as Trustee for the J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006-WMC4 is void, (e). a declaration that the Watson Note was never assigned to U.S. Bank, N.A. as Trustee for the J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006-WMC4, (f) a declaration that U.S. Bank National Association, as Trustee is not the legal owner or holder of the Note, mortgage lien, or Deed of Trust on the Property, (g) a declaration that Defendant, MERS made, presented, or used a document or other record with knowledge that the document or other record is fraudulent court record or a fraudulent lien or claim against real property or an interest in real property in violation of Tex, Civ. Prac. Rem. Code § 12.002, (h) a declaration that Defendant, MERS made, presented, or used a document or other

record with intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the Texas constitution or laws of the State of Texas, evidencing a valid lien or claim against real property or an interest in real property in violation of Tex, Civ. Prac. Rem. Code § 12.002, (i) . a declaration that Defendant, U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 made, presented, or used a document or other record with intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the Texas constitution or laws of the 'state of Texas, evidencing a valid lien or claim against real property or an interest in real property in violation of Tex, Civ. Prac. Rem. Code § 12.002, (j) a declaration that documents or records filed or caused to be filed by Defendant, MERS, falsely represented Defendant's interest in the real property that is the subject of such instruments in violation of Tex, Civ. Prac. Rem. Code § 12.002, (k) a declaration that MERS. did not have the power or the authority to transfer the Watson Deed of Trust  to U.S. Bank, N.A. as trustee for the J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006-WMC4, (l) a

declaration that neither U.S. Bank, N.A. as trustee for the J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006-WMC4  nor its agents has standing to foreclose the mortgage lien on the Property, (m) a declaration that the transfer of the Deed of Trust on the Property to U.S. Bank, N.A. as trustee for the J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006-WMC4 is void, (n) Quiet title in favor of Plaintiff and against Defendants, (o)  That        all Defendants, their successors, agents, representatives, employees, and all persons who act in concert with them be permanently enjoined from interfering with Plaintiff's possession of the property,

The issues on appeal are:

1.    Whether the district court's judgment should be reversed because the assignment of the Watson Deed of Trust by MERS to U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 is Void, not Voidable.

2.    Whether it was reversible error for the court to conclude that MERS transferred the note even though not specifically so stated  in the assignment of the Deed of

Trust.

3.   Was it reversible error for the court to conclude that Jolem did not have standing to challenge an assignment of the Watson Deed of Trust to the PSA even though the assignment occurred more than 90 days after the start-up date.

4.   Whether Jolem has alleged sufficient facts to give rise to a plausible inference of liability with regards to Plaintiff's cause of action alleging MERS has no right to assign the beneficial interest in the 'Watson deed of trust to J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 and by doing so, U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 (USB) recorded a fraudulent claim against Jolem's property.

5.   Whether Jolem has alleged sufficient facts to give rise to plausible liability against MERS with regards to Plainiff's cause of action alleging violations of Section 12.002 of the Tex. Civ. Prac. & Rem. Code.

## STATEMENT OF THE CASE

Plaintiff-Appellant is Jolem, LLC. Defendants-Appellees are, U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 (JPM), Mortgage Electronic Registration Systems Inc. (MERS), and Select Portfolio Servicing, Inc. (SPS),

Jolem, LLC, in Plaintiff-Appellant's First Amended Complaint,[1] sued Defendants-appellees for (a) Permanent Injunction (b) a declaration that on or about September 25, 2006, Defendant, MERS made, presented, or used a document or other record with knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real property, or an interest in real property., (c) a declaration that on or about September 25, 2006 and again on July 13, 2012, Defendant, MERS made, presented, or used a document or other record with knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real property, or an interest in real property, (d) a declaration that the transfer of lien or assignment of the Deed of Trust to U.S.

---

[1] ROA.333-395

1

Bank, N.A. as Trustee for the J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006-WMC4 is void, (e). a declaration that the Watson Note was never assigned to U.S. Bank, N.A. as Trustee for the J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006-WMC4, (f) a declaration that U.S. Bank National Association, as Trustee  is not the legal owner or  holder of the Note, mortgage lien, or Deed of Trust on the Property, (g) a declaration that Defendant, MERS made, presented, or used a document or other record with knowledge that the document or other record is fraudulent court record or a fraudulent lien or claim against real property or an interest in real property in violation of Tex, Civ. Prac. Rem. Code § 12.002, (h) a declaration that Defendant, MERS made, presented, or used a document or other record with intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the Texas constitution or laws of the State of Texas, evidencing a valid lien or claim against real property or an interest in real property in violation of Tex, Civ. Prac. Rem. Code § 12.002, (i). a declaration that Defendant, U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 made, presented, or used a document

or other record with intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the Texas constitution or laws of the 'state of Texas, evidencing a valid lien or claim against real property or an interest in real property in violation of Tex, Civ. Prac. Rem. Code § 12.002, (j) a declaration that documents or records filed or caused to be filed by Defendant, MERS, falsely represented Defendant's interest in the real property that is the subject of such instruments in violation of Tex, Civ. Prac. Rem. Code § 12.002, (k) a declaration that MERS. did not have the power or the authority to transfer the Watson Deed of Trust to U.S. Bank, N.A. as trustee for the J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006-WMC4, (l) a declaration that neither U.S. Bank, N.A. as trustee for the J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006-WMC4 nor its agents has standing to foreclose the mortgage lien on the Property, (m) a declaration that the transfer of the Deed of Trust on the Property to U.S. Bank, N.A. as trustee for the J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006-WMC4 is void, (n) Quiet title in favor of Plaintiff and against Defendants, (o) That all Defendants, their successors, agents, representatives, employees, and all persons

who act in concert with them be permanently enjoined from interfering with Plaintiff's possession of the property, (p).Damages against MERS in an amount the greater of

    (1)   $10,000.00, or

    (2)   the actual damages caused by the violation

(q) Damages against U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 in an amount the greater of

    (1)   $10,000.00, or

    (2)   the actual damages caused by the violation

(r).Court Costs

(s).Reasonable attorney's fees, and (t) All other relief the Court deems appropriate

The Property is located at 1435 Crescent Oak Drive. Missouri City, Texas 77439. (the "Property") The Property is also described as: Lot Sixteen (16), in In Block Four (4), of Crescent Oak Village at Lake Olympia Section Three (3), a subdivision in Fort Bend County, Texas, according to the map or plat thereof recorded in slide No. 1594/B of the Plat Records of Fort Bend County, Texas. JOLEM, LLC also sought a permanent injunction to enjoin Defendants

from interfering with Jolem, LLC's possession of the Property

Plaintiff-Appellant alleged the following in their Amended Complaint:

On or about September 20, 2006, Eddie L. Watson, a single man ("Watson) purchased the Property. [2]

Watson executed a Note as part of the purchase price that was secured by a Deed of Trust dated September 20, 2006 and recorded under document 2006119423 in the records for real property of Fort Bend County, Texas (the Deed of Trust. [3]

The lender in the Deed of Trust was WMC Mortgage Corporation. ("WMC")[4]

MERS was shown as a separate corporation that was acting solely as nominee for lender and lender's successors and assigns.[5]

On or about June 25, 2012, MERS as nominee for WMC assigned the Deed of Trust to U.S. Bank, N.A. (the "Assignment").[6]

---

[2] ROA.337
[3] ROA.338
[4] ROA.338
[5] ROA.338
[6] ROA.338

On or about August 6, 2013, Lake Olympic Civil Association foreclosed its assessment lien. Jolem was the highest bidder at that sale and received title to the Property through a Trustee's Deed.[7]

On or about September 25, 2014, SPS posted a Notice of Substitute Trustee's Sale for the Property.[8]

On or about November 3, 2014 Plaintiff filed his Original Petition for Declaratory Judgment, Application for Temporary Restraining Order and Request for Disclosure in the 400th Judicial District Court of Fort Bend County, Texas.[9]

The court granted Plaintiff's application for Temporary Restraining Order, which was served upon all interested parties.[10]

On or about November 18, 2014 JPM, MERS, and SPS, filed Notice of Removal and this case was removed from the Texas District Court and assigned to the Southern District of Texas.[11]

The Trust in Question is a New York Common Law Trust

The J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 is a

---

[7] ROA.338
[8] ROA.338
[9] ROA.338
[10] ROA.338
[11] ROA.339

New York common law trust that was formed pursuant to a pooling and servicing agreement dated as of December 1, 2006. The Pooling and Servicing Agreement, (the "PSA"), is by and among J.P. Morgan Acceptance Corporation, a Delaware corporation, as Depositor (the "Depositor"), J.P. Morgan Mortgage Acquisition Corp., a Delaware corporation, as Seller (the "Seller"), JP Morgan Chase Bank, National Association, as Servicer (the "Servicer"), The Bank of New York, as Securities Administrator (the "Securities Administrator"), Pentalpha Surveillance LLC as Trust Oversight Manager (the "Trust Oversight Manager") and U.S. Bank National Association, as Trustee (the "Trustee").[12]

The PSA for the J.P. Morgan Mortgage Acquisition Trust 2006- WMC4 is a legal document filed with the Securities and Exchange Commission that defines the rights and obligations of the parties involved. [13]

The Prospectus for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 (the "Prospectus") is another legal document that is filed with the Securities and Exchange Commission pursuant to

---

[12] ROA.340
[13] ROA.340

17 CFR 230.424B and provides the following information regarding J.P. Morgan Mortgage Acquisition Trust 2006-WMC4.[14]

The following pertinent terms in the overview statement are found in the Prospectus Supplement.[15]

ISSUING ENTITY

J.P. Morgan Mortgage Acquisition Trust 2006-WMC4, a common law trust formed under the laws of the State of New York, will issue the certificates. The issuing entity, also referred to as the trust, will be formed pursuant to a pooling and servicing agreement among the seller, depositor, the servicer, the securities administrator, the trust oversight manager and the trustee. The certificates solely represent beneficial ownership interests in the trust fund created under the pooling and servicing agreement and not an interest in, or the obligation of, the depositor, the sponsor, the trustee, the securities administrator, the trust oversight manager or any other person.[16]

---

[14] ROA.340
[15] ROA.340
[16] ROA.340

## THE TRUSTEE

U.S. Bank National Association, a national banking association, will act as trustee of the trust fund under the pooling and servicing agreement.[17]

## THE ORIGINATOR

All of the mortgage loans were originated or acquired by WMC Mortgage Corp., a California Corporation.[18]

## THE SPONSOR AND SELLER

J.P. Morgan Mortgage Acquisition Corp., a Delaware corporation, has previously acquired the mortgage loans from the originator. On the closing date, J.P. Morgan Mortgage Acquisition Corp., as seller, will sell all of its interest in the mortgage loans to the depositor.[19]

## THE DEPOSITOR

On the closing date, J.P. Morgan Acceptance Corporation I, a Delaware corporation, will assign all of its interest in the mortgage loans to the trustee for the benefit of certificateholders.[20]

## THE CUSTODIAN

JP Morgan Chase Bank, National Association, a national

---

[17] ROA.341
[18] ROA.341
[19] ROA.341
[20] ROA.341

banking association, will maintain custody of the mortgage files relating to the mortgage loans on behalf of the trust fund.[21]

## THE SECURITIES ADMINISTRATOR

The Bank of New York, a New York banking corporation, will act as securities administrator under the pooling and servicing agreement. The securities administrator will be responsible for performing certain calculations relating to distributions on the certificates, making payments on the certificates, acting as certificate registrar and transfer agent for the trust, making payments to the swap provider under the swap agreement and holding the trust accounts.[22]

## THE SERVICER

JPMorgan Chase Bank, National Association, a national banking association, will act as servicer of the mortgage loans.[23]

The following definitions are set forth in Section 1 of the PSA for The J.P. Morgan Mortgage Acquisition Trust 2006-WMC4.[24]

Seller/Sponsor  J.P.  Morgan  Mortgage  Acquisition  Corp.  or  its

---

[21] ROA.341
[22] ROA.341
[23] ROA.341
[24] ROA.341

successor in interest, in its capacity as seller.[25]

Depositor J.P. Morgan Acceptance Corporation I, a Delaware corporation, having its principal place of business in New York, or its successors in interest.[26]

Trustee   U.S. Bank National Association, a national banking association, not in its individual capacity, but solely in its capacity as Trustee for the benefit of the Certificateholders under this Agreement, or its successor in interest, or any successor trustee appointed as herein provided.[27]

THE ORIGINATOR       All of the mortgage loans were originated or acquired by WMC Mortgage Corp., a California Corporation.[28]

THE SECURITIES ADMINISTRATOR       The Bank of New York, a New York banking corporation, will act as securities administrator under the pooling and servicing agreement. The securities administrator will be responsible for performing certain

_____

[25] ROA.341
[26] ROA.342
[27] ROA.342
[28] ROA.342

calculations relating to distributions on the certificates, making payments on the certificates, acting as certificate registrar and transfer agent for the trust, making payments to the swap provider under the swap agreement and holding the trust accounts.[29]

THE SERVICER      JPMorgan Chase Bank, National Association, a national banking association, will act as servicer of the mortgage loans.[30]

Start-up day    With respect to each REMIC formed hereby, the day designated as such pursuant to Section 10.01(b) hereof.[31]

Closing day December 20, 2006.[32]

Article II of the PSA for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 titled Conveyance of Mortgage Loans; Original Issuance of Certificates, sets forth various rules concerning the mortgage loans the pertinent parts of which are as follows:

Section 2.01  Conveyance of Mortgage Loans.[33]

---

[29] ROA.342
[30] ROA.342
[31] ROA.342 Section 10 (b) of the PSA provides "The Closing Date is hereby designated as the "Startup Day" of each REMIC created hereunder within the meaning of Section 860G(a)(9) of the Code.
[32] ROA.342

The Depositor, concurrently with the execution and delivery hereof, does hereby establish the Trust and transfer, assign, set over and otherwise convey to the Trustee without recourse for the benefit of the Certificateholders all the right, title and interest of the Depositor, including any security interest therein for the benefit of the Depositor, in and to the Mortgage Loans identified on the Mortgage Loan Schedule, the rights of the Depositor under the Assignment and Assumption Agreement and the Mortgage Loan Purchase Agreement and all other assets included or to be included in the Trust Fund. Such assignment includes all interest and principal received by the Seller, the Depositor or the Servicer on or with respect to the Mortgage Loans (other than payments of principal and interest due on such Mortgage Loans on or before the Cut-off Date.[34]

Section 11 of the PSA provides "This Agreement and the Certificates shall be construed in accordance with the laws of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such

---

[33] ROA.342
[34] ROA.343

laws."[35]

The Trust, through its Trustee, is a New York Common Law Trust formed to act as a Real Estate Mortgage Investment Conduit "REMIC" trust pursuant to the U.S. Internal Revenue Code ("IRC"). Pursuant to the terms of the Trust and the applicable Internal Revenue Service Regulations ("IRS") adopted and incorporated into the terms of the Trust, the "Closing Date" of the Trust (December 20, 2006) is also the "Startup Day for the Trust under the REMIC provisions of the IRC. The Startup Day is significant because the IRC ties the limitations upon which a REMIC trust may receive its assets to this date. The relevant portion of the IRC addressing the definition of a REMIC is the PSA and is filed under oath with the Securities and Exchange Commission. The PSA also incorporates by reference a separate document called the Mortgage Loan Purchase Agreement ("MLPA"). These various documents and the acquisition of the mortgage assets for the Trust are governed under the law of the State of New York pursuant to Section 11.04.[36]

26 U.S.C.S. § 860D provides (a) General Rule: For purposes of

_____

[35] ROA.343
[36] ROA.343

this title, the terms 'real estate mortgage investment conduit' and 'REMIC' mean any entity (1) to which an election to be treated as a REMIC applies for the taxable year and all prior taxable years,(2) all of the interests in which are regular interests or residual interests,(3) which has 1 (and only 1) class of residual interests (and all distributions, if any, with respect to such interests are pro rata),(4) as of the close of the 3rd month beginning after the startup day and at all times thereafter, substantially all of the assets of which consist of qualified mortgages and permitted investments.[37]

The IRC also provides definitions of prohibited transactions and prohibited contributions, which are relevant to this case as well. In the context of the subject case, the relevant statute is the definition of *prohibited contributions,* which is as follows:[38]

26 U.S.C. 860G(d)(1) Except as provided in section 860G(d)(2), "if any amount is contributed to a REMIC after the Startup Day, there is hereby imposed a tax for the taxable year of the REMIC in which the contribution is received equal to 100 percent of the amount of such contribution 26 U.S.C. 860G(d)(2) Provides Exceptions.

---

[37] ROA.344
[38] ROA.344

15

Paragraph (1) shall not apply to any contribution that is made in cash and is described in any of the following subparagraphs:(A)[39]

Any contribution to facilitate a clean-up call (as defined in regulations) or a qualified liquidation.(B) Any payment in the nature of a guarantee.(C) Any contribution during the 3- month period beginning on the startup day.(D) Any contribution to a qualified reserve fund by any holder of a residual interest in the REMIC.(E) Any other contribution permitted in regulations. The PSA (primarily in section 10.01f and 10.02) addresses these sections of the IRC by obliging the parties to the Trust to avoid any action which might jeopardize the tax status of any REMIC and/or impose any tax upon the Trust for prohibited contributions or prohibited transactions.[40]

## LEGAL STANDARDS

### Standard of Review

A district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) is reviewed *de novo. Carroll v. Fort James Corp, 470 F. 3d 1171, 1173 (5th Cir 2006).* The Court must examine the

---

[39] ROA.344
[40] ROA.344

16

complaint in the light most favorable to Plaintiff, accepting all allegations as true and drawing all reasonable inferences in favor of Plaintiff. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982); *Piotrowski v. City of Houston*, 51 F.3d 512, 514 (5th Cir. 1995).The dismissal "will be upheld only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." *Hermann Holdings Ltd. V. Lucent Technologies, Inc.* 302 F. 3d 552, 558 (5th Cir 2002)(citing *U.S. ex rel. Thompson v Columbia HCA/Healthcare Corp.* 125 F. 3d 899, 901 (5th Cir 2001).

   A motion to dismiss for failure to state a claim admits the facts alleged in the complaint but challenges the Plaintiff's right to any relief based on those facts. *Crowe v. Henry*, 43 F. 3d 198, 203 (5th Cir. 1995). The issue is not whether the plaintiff will ultimately prevail but whether the plaintiff will be able to offer evidence to support its claims. *Semerenko v. Cendant Corp.*, 223 F. 3d 165, 173 (3rd Cir.1995).

Jurisdictional Standards

   Article III of the United States Constitution restricts federal

courts to adjudication of only actual "cases" or "controversies." U.S. CONST., Art. III, § 2, cl. 1; *see Lance v. Coffman*, 549 U.S. 437 (2007) This limitation requires a plaintiff to establish its standing to prosecute its claims in a federal complaint. *See Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 460 (6th Cir. 2007 To prove constitutional standing, a plaintiff must show an "injury in fact" attributable in some way to the defendant's alleged misconduct and which a favorable judgment will likely redress. *Courtney v. Smith*, 297 F.3d 455, 458-59 (6th Cir. 2002). In this context, "injury in fact" involves the invasion of a "legally protected interest" that is "concrete and particularized," as well as "actual or imminent." *Wilcher v. City of Akron*, 498 F.3d 516 (6th Cir. 2007). "Conjectural" or "hypothetical"injury does not suffice. *Airline Professionals Ass'n v. Airborne, Inc.*, 332 F.3d 983, 987 (6th Cir. 2003.

In United States Law, the *Erie Doctrine* is a fundamental legal doctrine of civil procedure mandating that a federal court in diversity jurisdiction must apply state substantive law. The doctrine follows from the landmark Supreme Court decision in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct 817, 821, 82 L. Ed. 1188(1938), decided on April 25, 1938, written by Justice Louis

Brandeis. The case overturned, *Swift v. Tyson*, 41 U.S. 1, 16 Pet 1, 10 L. Ed 865 which allowed federal judges sitting in a state to ignore the common law local decisions of state courts in the same state, in cases based on diversity jurisdiction.

Today, the American Erie doctrine applies regardless of how the federal court may hear a state claim. Whether the federal courts decide a state law issue vis-à-vis diversity jurisdiction or bankruptcy jurisdiction, the federal court must honor both statutory and state common law when deciding state law issues. See, generally *United Mine Workers v. Gibbs,* 383 U.S. 715 (1966) and *Butner v United States*, 440 U.S. 48 (1979). Where the Constitution did control and Congress could not legislate, the laws of the states necessarily governed, state judge-made rules were every bit as binding on the federal courts as were state statutory provisions. Accordingly, because the court's jurisdiction in this case was based upon diversity, Texas statutory and common law must be applied. Thus, standing in this case is determined by rulings from the highest court in the State of Texas and not from a ruling by a federal appellate court that "thinks or surmises", what Texas law is or should be.

Due Process Standards

The due course of the law guarantee of the Texas Constitution provides:

> No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.

Tex. Const. art 1 § 19. The Texas due course clause is nearly identical to the federal due process clause, which provides.

> No State shall make or enforce any law that shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property, without due process of law.

Denying Jolem the right to contest the void assignment of the Watson deed of trust in conjunction with denying Jolem the right to contest the non-transfer of the Watson Note is prohibited under both the Texas Constitution and the United States Constitution.

20

New York Trust Law

Plaintiffs in their original and amended complaint alleged that The J.P. Morgan Mortgage Acquisition Trust 2006-WMC49 (the "Trust") is a common law trust formed under the laws of the state of New York. Among other things, Plaintiffs alleged, this Agreement (i.e. the PSA) shall be construed in accordance with and governed by the substantive laws of the state of New York applicable to agreements made and to be performed in the State of New York and the obligations, rights and remedies of the parties hereto and the certificateholders shall be determined in accordance with such laws.

Plaintiff further alleged that MERS did not have the right to insert its name as beneficiary in Plaintiffs' Deed of Trust and by doing so, recorded a fraudulent document as that term is defined in Chapter 12 of the Texas Civil Practices and Remedies Code. Plaintiffs further alleged that MERS did not have the right to assign the Watson Note or Deed of Trust to U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 (JPM) and upon filing the assignment in the records of real property of Fort Bend County

21

Texas, U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 recorded a fraudulent document as that term is defined in Chapter 12 of the Texas Civil Practices and Remedies Code. [41]

## SUMMARY OF ARGUMENT

Under the common law of the State of Texas, Plaintiffs-

---

[41] a. Section 12.002 of the Texas Civil Practice and Remedies Code ("CPRC") provides:

(1)    a person may not make, present, or use a document or other record with,
  (i)    Knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;
  (ii)   intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in 37.01 Penal Code, evidencing a valid lien or claim against real or personal property, and
  (iii)  Intent to cause another person to suffer
       (A) physical injury
       (B)    Financial injury; or
       (C)    mental anguish or emotional distress
(2)    a person who violated Subsection (1) is liable to each injured person for:
  (i)    the greater of
       (A)    $10,000.00, or
       (B)    the actual damages caused by the violation
  (ii)   Court Costs
  (iii)  reasonable attorney's fees, and
  (iv)   exemplary damages in an amount determined by the court.

appellants have standing to challenge a void assignment. This right was acknowledged by the court below. Plaintiffs-Appellants challenge of MERS' authority to insert its name as beneficiary upon an analysis of the changes to Chapter 51 of the Texas Property Code. The 2003 legislative history of the changes to Chapter 51 of the Texas Property Code affords nothing in the plain language of the statute that permits MERS to designate itself as a grantee/grantor of record on behalf of its members in the real property records of Fort Bend, County and that there is no indication this was the Legislature's intent in enacting Section 51.0001(4)..

Section    12(1)(i) is the critical language of this statute. Liability attaches if the recorded document is (a) a fraudulent lien or (b) *a fraudulent claim.* (emphasis added) A claim, within the legislative intent of this statute, includes a fraudulent document that transfers an existing lien to another, thereby giving another a claim against real property or personal property or a document that is fraudulently transferred to another, thereby giving rise to a fraudulent claim against real or personal property. It should be noted that Plaintiffs-Appellees alleged that MERS violated Chapter 12 when it

filed the Watson Deed of Trust because so filing was a fraudulent lien. In addition, Plaintiffs-appellants alleged that U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4  violated Chapter 12 when the assignment of the Watson deed of trust was filed of record because the filing was a fraudulent claim. *See Gress v Bank of America, N.A.* No. 04-12- 00088-CV- (Tex. App.—San Antonio, February 6, 2013) where judgment for a fraudulent claim was rendered  against Bernard because the document he filed in the public records changed the trustee in the Deed of Trust securing the debt on his property was not authorized by Bank of America.

Plaintiffs-appellants have alleged sufficient facts, if true, would entitle them to relief under Chapter 12 of the Civil Practices and Remedies Code.

## ARGUMENT

1.    Whether the district court's judgment should be reversed because the assignment of the Watson Deed of Trust by MERS to U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 is Void and not Voidable.

The Court is correct when it concluded that under Texas Law,

"an obligor has standing to defend against an assignment on the grounds that would render that assignment void." ROA.874. The court was also correct that standing is not supported on grounds that would only render an assignment voidable at the election of the assignor. ROA.874. The court concluded that Jolem's claims could thus survive only if the assignment defects would render the assignment void. ROA.875

The court was also correct when it stated that, as a mortgage servicer, MERS has authority under the Texas Property Code to **administer the foreclosure** (emphasis mine) of property on behalf of a mortgagee. ROA.875. The court was also correct when it states that when it declares that under §51.0001, "MERS qualifies as a mortgagee because of its status as a book entry system and SPS on behalf of JPM qualifies as a mortgagee with the right to foreclosure as long as the assignment is valid." The key words here are **"so long as the assignment is valid."** Nonetheless, there is no reasonable argument nor facts relied upon by the court when it concluded that "MERS has the right to assign the beneficial interest of a note or Deed of Trust."

The court justifies its conclusion by stating that "Here, MERS did not insert itself into the deed of trust, it was designated as beneficiary in an instrument approved by WMC and Watson who signed the Deed.[42] There is nothing in the deed of trust that shows that WMC approved a single statement in this document. There is no signature by a WMC official nor is there a statement that signifies WMC approved the document nor are there any other facts in evidence upon which the court could base its conclusion that "it was designated as beneficiary in an instrument **approved** by WMC..."

Furthermore, the document signed by Watson is an adhesion contract.[43] *See Crowell v. Housing Authority of City of Dallas,* 495 SW 2d 887 (Tex.1973) Watson had no bargaining power, he had to either sign the document or be denied the loan. In addition, what power did Watson have to grant MERS the right to assign the beneficial interest in the deed of trust? Under no stretch of the law did Watson have such power.

---

[42] The document in question is deed of trust and not a Deed as stated by the Court. ROA.365

[43] An "adhesion contract" has been defined as a standardized contract form for consumer goods and services that are offered on a "take it or leave it" basis without affording the consumer a realistic opportunity to bargain and under such conditions, that consumer cannot obtain the desired product or services except by acquiescing. See Black's Law Dictionary 38 (5th ed. 1979).

In 2003, the Texas Legislature amended Chapter 51 of the Texas Property Code to provide a broader definition of "mortgagee" and expanded the list of those who could conduct foreclosure sales on behalf of lenders. See Legislative History and Text of House Bill 1493, including Committee Reports, HB 1493, Leg. Sess. 78(R) (2003), available at http://www.legis.state.tx.us/BillLookup/BillNumber.aspx.

The Bill Analysis declares the following:

BACKGROUND AND PURPOSE

Chapter 51, Property Code governs the foreclosure process. Over the years, practices have been developed to manage the foreclosure process, many of which, though not inconsistent with Chapter 51, are not expressly authorized by it For example, it is common practice for lenders to rely upon mortgage servicers to accept loan payments on behalf of the lender, but current law does not address the role of mortgage servicers in the foreclosure process. Current practice is for the mortgage servicer to administer this process on behalf of the lender. A recent appeals court

ruling has cast doubt as to whether a mortgage servicer may administer the foreclosure process because the law does not specifically authorize it. Further uncertainty exists in the foreclosure process because key terms, such as "debtor's last known address, are not defined in law and other common practices, such as appointing substitute trustees, are not included in law."

C.S.H.B. 1493 permits a mortgage servicer to administer the foreclosure process on behalf of the mortgagee and clarifies several terms used in the statutes governing the foreclosure process.

Throughout the legislative history of the changes to Chapter 51, the common theme expressed by the legislature is as follows:

A BILL TO BE ENTITLED AN ACT

relating to the foreclosure of property and the authority of a mortgage servicer to administer the foreclosure on behalf of a mortgagee.

Chapter 51 is part of Title 5 of the Property Code, entitled "Exempt Property & Liens." This part of the Code addresses the

28

relationship between borrowers and lenders. It regulates foreclosure procedures. Chapter 51 has nothing to do with recording. Moreover, the express language of Chapter 51 limits the definitions to that chapter, by stating: "Sec. 51.001 DEFINITIONS. ***In this chapter:*** ...." TEX. PROP. CODE § 51.001 (emphasis added). Certainly, if the Legislature had intended to include booking systems as mortgagees in the land recording systems, the Legislature would have amended Title 3, chapter 12 in the same manner it amended Chapter 51. The Legislature did not.

All of these factors confirm that the definition of "mortgagee" in Chapter 51 applies only to the subject matter of Chapter 51, i.e.-the regulation of foreclosure proceedings. *See* TEX. Gov'T CODE § 311.023 (listing various characteristics to be considered when construing statutes, including object sought to be attained, administrative construction of the statutes and the title of the provision being construed). The applicable definition of "mortgagee" is in Title 3, chapter 12 of the Property Code, not Title 5, Chapter 51; and that Title 3 definition precludes MERS from qualifying as a mortgagee and therefore a grantee. Hence, MERS is precluded from

asserting any rights as an owner, grantee or grantor in a security instrument in the State of Texas.

Besides, MERS has consistently admitted that it is not the grantee of a mortgage, an assignee of the mortgage, or the mortgage servicer.[44] So in the chapter of the Property Code containing the provisions regulating public recording, the Texas Legislature **has not** conferred the status of grantee upon the nominee of a beneficiary. The Legislature did not endorse or permit nominees or agents to be listed as grantees in the public real estate records. And that is perfectly logical, why would the Legislature interject inaccuracy into a system that was created by the Legislature to promote accuracy, clarity, and reliability?

Appellant acknowledges that the documents in the record show MERS is beneficiary in Watson's Security Instrument. Moreover, the fact that MERS is shown as a beneficiary in the Watson Security Instrument is not the issue, the issue is, under what authority does MERS insert its name as beneficiary in the Watson Security

---

[44] See Brief of Appellant (MERS) in *Mortgage Electronic Registration Systems, Inc. v Nebraska Department of Banking and Finance* 704 N.W.2d 784 (Neb.2005) in which MERS asserted that it had "no interest at all" in promissory notes, no rights to the payments under the promissory notes and no beneficial interest in the mortgage.

Instrument, through which device MERS assigned the beneficial interests in Watson Security Instrument to U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4.

Because nothing in the laws of the State of Texas bestows upon MERS the right to assert its name as a beneficiary in the Watson's Security Instrument, MERS does not have the power to designate itself as a grantee/grantor of record on behalf of its members in the real property records of Fort Bend County.

The Court is reminded that MERS is not a lender, and it does not have the rights of a lender, note holder, or note owner to enforce a promissory note and seek a judgment against a debtor for the repayment of loans. MERS is merely an agent or nominee for its members, who are banks, lenders, and other financial institutions that hold and trade promissory notes secured by deeds of trust naming them as the lenders and MERS as the beneficiary. Under the MERS system, member banks and lenders grant MERS certain rights under the deeds of trust, such as the right to conduct a foreclosure sale for properties in default, or to appoint a substitute trustee to

31

conduct a foreclosure. However, MERS is not entitled to seek personal judgments against the debtors for the repayment of the loans, and MERS has no right to foreclose or take any other actions with respect to the mortgaged properties beyond those specifically permitted in the deeds of trust and under Texas law. *See Resolution Trust Corp. v. Camp*, 965 F.2d 25, 29–30 (5th Cir. 1992*); Miller v. Homecomings Financial, LLC,* 881 F. Supp. 2d 825 (2012); *Millet v. J.P. Morgan Chase, N.A.*, No. SA-11-CV-1031-XR, 2012 WL 1029497, at *2 (W.D. Tex. Mar. 26, 2012).

Appellant does not challenge the argument that "Texas state courts have repeatedly held that MERS can be beneficiary of the Mortgage and have authority to foreclose on the Property as a result." Nevertheless, conducting a foreclosure sale as opposed to assigning the beneficial interest in a Mortgage are two completely different powers.

A plain reading of Section 51.0001(4) demonstrates that the Texas Legislature intended to permit lenders to designate MERS as the mortgagee in a Security Instrument so that MERS could serve as the nominee or agent of the lender and its successors and assigns.

Numerous Texas courts have also recognized that naming MERS as the mortgagee in a Security Instrument so that it may serve as the nominee or agent of the lender and its successors and assigns is permissible under Texas law. See, e.g., *Bexar Cnty. v. Merscorp, Inc.*, No. 5:12-cv-00586-FB, D.E. 36 at 14 (W.D. Tex. Feb. 25, 2013) (M&R issued by Magistrate Judge); *Swim v. Bank of America*, No. 3:11-CV-1240-M, 2012 WL 170758, at *3 n. 25 (N.D. Tex. Jan. 20, 2012) (collecting cases*); Hornbuckle v. Countrywide Home Loans, Inc.,* No. 02-09-00330-CV, 2011 WL 1901975, at *4 (Tex. App.—Fort Worth, May 19, 2011) ("A book entry system such as MERS is included within the definition of 'mortgagee' under Texas law.")

Nevertheless, MERS went beyond merely designating itself as a mortgagee to act as an agent or nominee of its members. MERS additionally filed deeds of trust naming itself as a beneficiary, grantor, grantee, lender, and holder or owner of promissory notes and deeds of trust for the purpose of MERS being designated as the grantee/grantor on thousands of mortgages in Fort Bend's real property records. MERS designated itself as "Payee" in the assignment of the Watson Deed of Trust to U.S. Bank National

Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4  This statement in and of itself is fraudulent based on MERS' prior judicial admissions that it is not entitled to payments and never collects them. Therefore, nothing in the plain language of the statute permits MERS to designate itself as a grantee/grantor of record on behalf of its members in the real property records of Fort Bend County, and there is no indication that this was the Legislature's intent in enacting Section 51.0001(4).

In addition, Shequita Knox affixing her signature as vice-president of MERS on the Corporate Assignment of Deed of Trust is not the signature of a person who was authorized by the true creditor to assign the beneficial interest in the Watson Deed of Trust to U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4. Hence, the assignment of the Watson deed of trust by Shequita Knox is void because her signature is a forgery. The assignment of the beneficial interest in the Watson Deed of Trust under the signature of Shequita Knox as vice president of MERS is a forgery because it is an act that alters, makes, completes, executes, or authenticates a writing so that it purports to be the act

34

of another who did not authorize that act.[45]

_____

[45] Sec. 32.21.  FORGERY.  (a)  For purposes of this section:
 (1)  "Forge" means:
  (A)  to alter, make, complete, execute, or authenticate any writing so that it purports:
   (i)  to be the act of another who did not authorize that act;
   (ii)  to have been executed at a time or place or in a numbered sequence other than was in fact the case;  or
   (iii)  to be a copy of an original when no such original existed;
  (B)  to issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged within the meaning of Paragraph (A);  or
  (C)  to possess a writing that is forged within the meaning of Paragraph (A) with intent to utter it in a manner specified in Paragraph (B).
 (2)  "Writing" includes:
  (A)  printing or any other method of recording information;
  (B)  money, coins, tokens, stamps, seals, credit cards, badges, and trademarks;  and
  (C)  symbols of value, right, privilege, or identification.
 (b)  A person commits an offense if he forges a writing with intent to defraud or harm another.
 (c)  Except as provided by Subsections (d), (e), and (e-1), an offense under this section is a Class A misdemeanor.
 (d)  An offense under this section is a state jail felony if the writing is or purports to be a will, codicil, deed, deed of trust, mortgage, security instrument, security agreement, credit card, check, authorization to debit an account at a financial institution, or similar sight order for payment of money, contract, release, or other commercial instrument.
 (e)  An offense under this section is a felony of the third degree if the writing is or purports to be:
  (1)  part of an issue of money, securities, postage or revenue stamps;
  (2)  a government record listed in Section 37.01(2)(C);  or
  (3)  other instruments issued by a state or national government or by a subdivision of either, or part of an issue of stock, bonds, or other instruments representing interests in or claims against another person.
 (e-1)  An offense under this section is increased to the next higher category of offense if it is shown on the trial of the offense that the offense was committed against an elderly individual as defined by Section 22.04.
 (f)  A person is presumed to intend to defraud or harm another if the person acts with respect to two or more writings of the same type and if each writing is a government record listed in Section 37.01(2)(C).

In the instant case, the MERS "assignment" is a fabricated, false instrument which purports to "assign," in its own name, the beneficial interest of the subject deed of trust to U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4, thereby bypassing the true creditor and thus breaking the chain of title.

Furthermore, even if MERS had the authority to assign the beneficial interest in the Watson Deed of Trust in conjunction with the fiction that the Note follows the deed of trust, the assignment(s) would be void under New York Law because the assignment occurred more than ninety days after the closing date. Accepting the Watson Note more than ninety days after the closing date is an act prohibited by Section X(f) of the PSA.[46] Therefore, accepting an unqualified

---

Acts 1973, 63rd Leg., p. 883, ch. 399, Sec. 1, eff. Jan. 1, 1974.  Amended by Acts 1991, 72nd Leg., ch. 113, Sec. 2, eff. Sept. 1, 1991;  Acts 1993, 73rd Leg., ch. 900, Sec. 1.01, eff. Sept. 1, 1994;  Acts 1997, 75th Leg., ch. 189, Sec. 1, eff. May 21, 1997;  Acts 2003, 78th Leg., ch. 1104, Sec. 1, eff. Sept. 1, 2003.
Amended by: Acts 2009, 81st Leg., R.S., Ch. 670 (H.B. 2328), Sec. 1, eff. September 1, 2009.

[46]  Section X(f) provides in pertinent part, "Neither the Trustee nor the Securities Administrator shall take any action, cause the Trust Fund to take any action or fail to take (or fail to cause to be taken) any action that, under the REMIC Provisions, if taken or not taken, as the case may be, could (i) endanger the status of any REMIC created hereunder as a REMIC or (ii) result in the imposition of a tax upon the Trust Fund (including but not limited to the tax on prohibited transactions as defined in Section 860F(a)(2) of the Code and the tax on contributions to a REMIC set forth in Section 860G(d) of the Code) (either such event, an "Adverse REMIC

mortgage as a trust asset cannot be ratified by the certificate holders under any circumstances.

Neither the law nor the facts support MERS labeling itself as a beneficiary in Texas Counties' land recording systems.

The second reason that the assignment of the Watson Deed of Trust to U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 is void, is that under the PSA, section 2.01[47], the only entity that had the power to assign the note or deed of trust to the trustee was the Depositor, J.P. Morgan Acceptance Corporation I.

The court is reminded that the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 is a New York common law trust and as such, is governed under the laws of the State of New York.[48] This trust has been established by an instrument in writing, i.e. the PSA. New York Estates, Powers & Trusts Part 2 - § 7-2.4 Act of Trustee in Contravention of Trust provides; If the trust is expressed in the instrument creating the estate of the trust, every sale, conveyance or other act of the trustee in contravention of the trust, except a

---

Event")
[47] ROA.342
[48] ROA.343

37

and by any other provision of law, is void. Consequently, MERS is not the depositor identified in the PSA. Consequently, U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 acceptance of the Watson Deed of trusts is a conveyance in contravention of the trust and is thus Void. Here again, Jolem is not attempting to enforce the PSA. Jolem's complaint is contesting the assignment by MERS as being Void because MERS is a stranger to the PSA.

2.    Whether it was reversible error for the court to conclude that MERS transferred the note even though not specifically stated in the assignment of the Deed of Trust.

Here again, the court is reminded that all actions in connection with the assignment of the note and deed of trust are controlled by New York law. The court adheres to the proposition that the fifth circuit on behalf of Texas has cleared up a split in authority concerning mortgage assignments through the MERS system. It did so by ignoring two separate appellate decisions that held that in order to foreclose, the foreclosing party must have ownership of the note and deed of trust.[49] The court conveniently ignores that it is New York Law and not fifth circuit Texas law that

---

[49] See *Leavings v Mills*, 175 S.W.3d, 301 (Tex App.—Houston (1st Dist] 2004 no pet and *Shepard v Boone*, 99 S.W.3d 263 (Tex.App Eastland) 2003 no pet

controls the situation.

Under New York Law, the plaintiff must prove its standing in order to be entitled to relief. *U.S. Bank, N.A. v Collymore*, 68 AD3d 752, 753 [2009]; *wilcher Bank Minn., N.A. v Mastropaolo*, 42 AD3d 239, 242 [2007]. In a mortgage foreclosure action, "[a] plaintiff has standing where it is the holder or assignee of both the subject mortgage and of the underlying note at the time the action is commenced". *HSBC Bank USA v Hernandez*, 92 AD3d 843, 843 [2012]; see *U.S. Bank, N.A. v Collymore*, 68 AD3d at 753; *Countrywide Home Loans, Inc. v Gress*, 68 AD3d 709, 709 [2009]. "'Either a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation'". *HSBC Bank USA v Hernandez*, 92 AD3d at 844, quoting *U.S. Bank, N.A. v Collymore*, 68 AD3d at 754; see *Aurora Loan Servs., LLC v Weisblum*, 85 AD3d 95, 108 [2011]. "Where a mortgage is represented by a bond or other instrument, an assignment of the mortgage without assignment of the underlying note or bond is a nullity". *U.S. Bank, N.A. v Collymore*, 68 AD3d at 754; see *Merritt v Bartholick*, 36 NY 44, 45 [1867]; Kluge v Fugazy, 145 AD2d 537, 538 [1988].

Here, the MERS assignment omitted the Note. Therefore, under New York Law the assignment of the Deed of Trust to the Trustee was Void.

3.    Was it reversible error for the court to conclude that Jolem did not have standing to challenge an assignment of the Watson Deed of Trust to the PSA even though the assignment occurred more than 90 days after the start-up date.

Jolem is not challenging violations of the PSA. Rather, Jolem is challenging the Trustee's actions when it allegedly accepted an assignment of a security instrument that occurred more than 90 days after the start-up date. Under New York Estates, Powers & Trusts - Part 2 - § 7-2.4, this act is VOID and not Voidable.

The court acknowledged that "Jolem is correct in alleging that under Texas Law, an obligor has standing to defend against an assignment on grounds that would render that assignment void." The trust in question is expressed in an instrument in writing. The acts of a trustee who accepts an assignment of a security instrument more than 90 days after the start-up date is a conveyance or other act of the trustee in contravention of the trust, and thus Void. Therefore, it was error for the court to conclude that Jolem lacked standing to challenge the void assignment.

40

The court relying upon *Mooney v Madden*, 597 N.Y. S2d 795 (N.Y. App. Div. 1993) concludes that the assignment is a voidable act. *Mooney* discusses an act that is outside of the scope of the Trustee's power when it mentions "ultra vires" acts. An ultra vires act is an act performed without any authority to act on the subject.[50] However, accepting an assignment of a security instrument more than 90 days after the start-up date, specifically prohibited by the PSA and U.S.C. §860F(a)(2)(B), is not an act performed without any authority to act. This is an act that is prohibited. Furthermore, there is nothing in the PSA that grants certificate holders the power to cause a 100 percent penalty to the Trust by ratifying an act that is prohibited under U.S.C. §860F(a)(2)(B)(accepting a loan into the Trust more than 90 days after the Trust closes).

Accordingly, transferring the Watson note to the trust more than 90 days after its closing date is a prohibited transaction under 26 U.S.C. §860F(a)(2)(B) that would subject the Trust to a 100% penalty under 26 U.S.C. §860F(a)(1), as an event prohibited under PSA § 8.11.    As such, the transaction was void under New York Estates,

---

[50] Blacks Law Dictionary 6th edition 1990

Powers, and Trust Law § 7-2.4. Hence, accepting a loan into the Trust more than 90 days after the closing date is a prohibited act that cannot be ratified by the certificateholders. As a result, U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 (JPM) never became the owner of the Watson note or security instrument.

Therefore it was reversible error for the court to conclude that Jolem did not have standing to challenge the trustee's actions.

4.    Whether Jolem has alleged sufficient facts to give rise to a plausible inference of liability with regards to Plaintiff's cause of action alleging MERS has no right to assign the beneficial interest in the 'Watson deed of trust to J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 and by doing so, U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 (USB) recorded a fraudulent claim against Jolem's property.

The answer to this question is dependent upon whether or not MERS had the power to transfer the Watson Deed of Trust to U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 (JPM)

Jolem alleged that MERS does not have the power or the authority to transfer a Note to the Trustee of the Trust for the

following reasons:

a.   The Prospectus, as well as the PSA for the trust, does not list MERS as a party to the Trust.

b.   Although MERS may be shown as a nominee in the Deed of Trust securing the First Note, without more, a nominee under New York law is powerless to transfer, assign or transfer the mortgage instrument, here the deed of trust.

c.   MERS has no power to transfer the note to the trust because it is not listed as a party to the PSA and is clearly not given any powers in the First Note.

d.   Furthermore, as discussed previously, when the Texas Legislature amended Texas Property Code §51.0001 in 2003, it designated who may undertake a non-judicial foreclosure, but that has no bearing on the recording of Deeds of Trust or whether MERS may serve as a beneficiary of a deed of a deed of trust. Texas law does not permit MERS to declare that it is a grantee, beneficiary, owner, or holder of a security instrument.

e.   "Section 51.0001(4) does not redefine MERS as a grantee, beneficiary, owner, or holder of a security instrument as urged by Defendants (MERS); nor does it indicate an intent on the part of the Legislature to permit MERS to be indexed as a substitute grantee in the county property records on behalf of its members. Defendants' (MERS') interpretation is inconsistent with the plain language of Section 51.0001(4); it is inconsistent with the Court's interpretation of Section 51.0001(4) in the larger context of Chapter 51; and it is inconsistent with the legislative history of the 2003 amendment to Chapter 51. This Court cannot simply bend the laws of Texas to fit the MERS system, no matter how ubiquitous it has become. *See Gov't Personnel Mut. Life Ins. Co. v. Wear*, 251 S.W.2d 525, 529 (Tex. 1952) ("the duty of courts [is] to construe a law as written . . . and not look for extraneous reasons to be used as a basis for reading into a law an intention not expressed nor intended to be expressed therein"); *In Re Agard*, 444 B.R. 231 (E.D.N.Y. 2011) ("This Court does not accept the argument that

because MERS may be involved with 50% of all residential mortgages in the country, that is reason enough for this Court to turn a blind eye to the fact that this process does not comply with the law."). The Court concludes that, for purposes of Chapter 51 of the Texas Property Code, MERS is not a lender, grantee, beneficiary, owner, or holder of security instruments; it is merely the nominee of the MERS members who serve in those capacities.

Accordingly, Section 51.0001 of the Texas Property Code does not shield Defendants from liability."

Therefore, it was reversible error for the Court to dismiss Jolem's complaint regarding MERS' lack of authority to assign the Watson Deed of Trust to U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 (JPM) because Jolem has alleged sufficient facts, to give rise to a plausible inference of liability with regards to Plaintiffs' cause of action alleging that MERS does not, under Texas Law, have the authority to assign the Watson Deed of Trust and Note to U.S.

Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 and in so doing, it filed a fraudulent claim in violation of Civ. Prac. & Rem Code Chapter 12.

5.  Whether Jolem has alleged sufficient facts to give rise to plausible liability against MERS with regards to Plaintiff's cause of action alleging violations of Section 12.002 of the Tex. Civ. Prac. & Rem. Code.

    Jolem's Amended Complaint alleged the following:

a.  That MERS filed a document that is a fraudulent lien or claim with knowledge that the document was a fraudulent lien or claim against real property. Jolem further alleged that MERS, under Texas law, does not have the authority to insert its name as a beneficiary in a Deed of Trust. In addition, so doing, was the creation of a fraudulent document or instrument and the lien is thus void.

b.  That MERS intended that the document or other record be given the same legal effect as a court record or document created by or established by the constitution or laws of this state. MERS intended to cause another

46

person to suffer financial injury because MERS planned and did use this fraudulent document as the basis upon which to assign the beneficial interest in the Watson deed of trust to another, in this case U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 (JPM)

c.   That U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 (JPM) recorded the assignment of the Watson Deed of Trust with knowledge that the document was a fraudulent claim against real property. The assignment of the Watson Deed of Trust is fraudulent because MERS, under Texas law, does not have the authority to assign the Watson Deed of Trust to U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 (JPM). The assignment is a fraudulent claim and is thus void. That U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 violated Chapter

47

12 of the Civil Practices and Remedies Code upon filing of the assignment in the Records of Real Property of Fort Bend County.

d.   That U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 intended that the document or other record be given the same legal effect as a court record or document created by or established by the constitution or laws of this state. The "intent" argument alleged against MERS is applicable to That U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 act as well. That is, That U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 intended to cause another person to suffer financial injury because That U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 planned and did use this fraudulent claim against Jolem's property to accelerate and give notice of

the Substitute Trustee Sale.

e.      That U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 is therefore liable for damages for its violation of Chapter 12 of the Civil Practices and Remedies Code which is the greater of $10,000 or the actual damages caused by the violations, court costs and exemplary damages.

f.      Foreclosure of the Deed of Trust will cause Appellant to suffer a financial loss. A party who proves the elements of a Section 12.002(a) violation may recover

g.      $10,000.00 or the actual damages caused by the violation whichever greater, in addition to court costs, attorney's fees, and exemplary damages. See *Girdner v. Rose,* 213 S.W.3d 438, 444-45 (Tex.App.—Eastland 2006, no pet.).

Hence, Jolem has alleged sufficient facts to give rise to a plausible inference of liability with regards to Plaintiffs' cause of

action alleging violations of section 12.002 of the Tex. Civ. Prac. & Rem Code by That U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 and MERS.

Therefore, it was reversible error for the Court to dismiss Jolem's complaint against U.S. Bank National Association, as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 and MERS for violations of the Tex. Civ. Prac. & Rem Code.

## Conclusion

For the foregoing reasons, Appellant, Jolem, LLC respectfully requests that the Court reverse the district court's dismissal of their complaint and remand the claims for further proceedings consistent with this opinion because they will suffer an "injury in fact", "actual or imminent" that is "concrete and particularized".

Jolem, LLC also respectfully requests any such other and further relief to which they may be entitled.

Respectfully Submitted

/s./G. P. Matherne
G. P. Matherne

50

PO Box 547
Spring, Texas 77383-0547
TBA 13186300
(713) 827-1702
(281) 353-2651 FAX
E-mail legistgpm@comcast.net

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 10,741 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and Cir. R. 32.1 and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word 2010 in Bookman Old Style using 14 point font for body text and 12 point font for footnotes.

_/s/ G. P. Matherne_
G. P. Matherne

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Appellant's Brief for Jolem, LLC was served Via E-mail or first class mail on October 5, 2015 to the following counsel of record as follows:

Kurt Lance Krolikowski
Locke Lord Bissell et al
600 Travis
Ste 2800
Houston, TX 77002
Email: kkrolikowski@lockelord.com

_____/s/ G. P. Matherne_____
G. P. Matherne

## ECF CERTIFICATIONS

In connection with the electronic filing of this document, I hereby certify that: (1) all required privacy redactions have been made; (2) the electronic submission is an exact copy of the paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

_____/s/ G. P. Matherne_____
G. P. Matherne